Totten, J.,
delivered the opinion of the court.
The prisoner was charged by indictment, in the circuit court of Franklin, with the murder of Stephen Adams. He pleaded “not guilty,” and at November Term, 1853, was tried and convicted of murder in the second degree. He moved for a new trial, which was refused, and judgment being rendered against him, he appealed in error to this court. . The general character of the case may be stated in few words. Stephen Adams was some eighty years of age, and of feeble health; he had but one child, a daughter, who was married to the prisoner in the early part of 1852. The prisoner resided with Mr. Adams, and made a crop, aided by two slaves, the property of Mr. Adams. In September, 1852, the prisoner tied one of the slaves to a tree near the house, and whipped him; having him tied, he went to get more switches, and while gone for that purpose, Mr. Adams came to the slave and released him. The prisoner returned — a quarrel ensued between him and Mr. Adams, when the latter received the wounds of which he died about three hours thereafter.
*217 The wife of the prisoner was present, and witnessed the scene, hut she of course, is incompetent to detail it. Another person, who seems to he a friend to the prisoner, was standing a short distance from the parties, hut professed not to know how the homicide was committed. Mr. Adams was assisted to the house, and while lying in his hed, where he died, made the following declarations. He said to Mr. "Wagnex*, who came to see him, “ Willis (the prisoner,) has given me my deathly wound; has knocked me down with a stick, and I am hadly heaten.” He then called the negro slave; asked Mm if he was hadly injured, and said to the slave, in presence of witness, Willis has given me my deathly wound; I expect I will die, and you will have to be hired out. I want you to le good to my da/aghier.
Again, he said to McElroy, “ I know I cannot live; I am obliged to die ; there is no chance for me to get over it.”
He then said that the prisoner had knocked him down with a stick; had heaten Mm very much; and detailed the facts in substance, as before stated. While making these statements, he appeared to he in deep distress; breathed very badly; and complained of violent suffering in the head and breast.
1. It is insisted that the court erred in admitting the declarations of the deceased, to he given in evidence against the prisoner. The objection goes to the competency of the evidence, and that is a question to he determined by the judge, upon px*oof of the state of mind and condition of the deceased, at the time the declarations were made.
How, were the statements of the deceased dying declarations, 'in a legal sense ? Declarations made when *218 the deceased is in wUculo mortis, and conscious of the fact, are admissible as evidence. They must be made in view of impending and inevitable death; and being thus made, while in a condition so impressive ; when there is no hope of time, and no motive of falsehood, they carry with them as high a guaranty for truth, as if made under oath. But declarations made merely in fear and apprehension of death, are not admissible. The mind must be convinced that death is impending and almost immediate. Smith vs. State, 9 Humph. It., 10. Now, testing these declarations by the rule we have stated, we are satisfied that they were properly admitted as dying declarations. We cannot doubt, in view of the condition and statements of the deceased, that he was fully impressed with the belief that his injuries were mortal, and that a speedy and inevitable death was impending.
2. It is said that William Perry, one of the jurors, had prejudged the case, and was therefore incompetent. To support this fact, two affidavits were produced, on the motion for a new trial; 1st. Oscar states that as he came to court with Perry, the morning he was taken on the jury, he asked him if he was not afraid to go to town? Perry replied, “no, I have formed my opinion as to the last case there is; and as to Brakefield, I believe he ought to be hung;” and Edwards states that he was in company with. Perry on his way to the court, who en-quired of him if he was not a witness in this case ? Affiant replied that he was a witness for the State. Perry then said, alluding to the prisoner, “damn him, he ought to be hung.” The prisoner states in his affidavit, that he had no knowledge of these facts when Perry was taken on the jury.
*219 It is well settled, “ that loose impressions and eonver-* sations of a juror, founded upon rumor, will not, if disclosed by him, or others, to the court, have the effect to set him aside as incompetent. Troxdale vs. State, 9 Humph. R., 422; Howerton vs. State, Meigs’ R., 262.
"We are not disposed to disturb the doctrines of these cases; but was Perry’s remark a mere loose impression, founded upon rumor? Ve think not. His statement is in the strongest terms of opinion, conviction and prejudice ; he pronounces the prisoner as guilty, and guilty of the highest grade of murder. He stands clearly convicted of 'having prejudged the case. His examination upon his voL dire, before the court does not appear; his counter-affidavit is produced to explain the matter; but it is a settled rule that the affidavit of the offending juror cannot be relied on to exculpate himself, and prejudice the prisoner. Hines vs. State, 8 Humph. R., 602; Luster vs. State, 11 Humph. R., 170.
We are to presume that his statement before the court made him apparently competent as a juror; after the trial, he is accused upon the evidence of the witnesses, of having prejudged the case. The juror stands criminated before the court, and in such case his own affidavit cannot be credited or relied on, when it involves the rights of the accused. Other affidavits of jurors were made to the effect that Perry, the juror, was favorable to the prisoner on the trial. This fact, we regard as not pertinent to the issue, which is, was the juror competent? not what his conduct was after .he was taken on the jury. If he was put to the prisoner as a competent juror, when in fact he was *220 incompetent, the rights of the prisoner were violated, and it is a legal presumption that he was injured. These affidavits being out of view, the case rests simply upon the statement of the two witnesses, who fully convict the juror of having prejudged the prisoner; nor can we presume, in the absence of any legal proof, that his judgment rested merely upon rumor; but on the contrary, we are to presume that it was founded on facts and statements which he considered entitled to credit. A verdict thus tainted cannot be permitted to stand; the prisoner was entitled to an “ impartial jury.”
Let the judgment be reversed, and the prisoner be remanded for a new trial. Judgment reversed.